J-A10009-24

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| JEREMIAH BUSH | : | |
| | : | |
| Appellant | : | No. 6 EDA 2023 |

Appeal from the PCRA Order Entered December 2, 2022
In the Court of Common Pleas of Philadelphia County
Criminal Division at No(s): CP-51-CR-0008142-2012

BEFORE: PANELLA, P.J.E., BECK, J., and COLINS, J.*

MEMORANDUM BY PANELLA, P.J.E.: **FILED JUNE 7, 2024**

Jeremiah Bush appeals *pro se* from the order entered on December 2, 2022, denying his first, timely petition pursuant to the Post-Conviction Relief Act ("PCRA"), 42 Pa.C.S.A. §§ 9541-9546. Because we conclude that his claims either lack merit or are waived, we affirm.

A prior panel of this Court set forth the relevant factual history as follows:

> At trial, [held January 27, 2014, through January 30, 2014,] the Commonwealth presented the testimony of Philadelphia Police Sergeant Steven Crosby, Philadelphia Police Detectives Michael Rocks and William Kelhower, Philadelphia Police Officers Robert Burrell, Ronald Weitman, Russell Seiberlich, and Scott Pollack, Assistant Medical Examiner Dr. Edwin Lieberman, as well as Lorna Wall, Clarence Milton, K[h]alil Bell, and Robert Matthews. Bush testified on his own behalf. Viewed in [the] light most favorable to

---

* Retired Senior Judge assigned to the Superior Court.

the Commonwealth as the verdict winner, the evidence established the following.

Bush, Clarence Milton, and Steven Brown were childhood friends who engaged in drug-selling activities for several years prior to 2006. As part of his drug operation, Steven Brown used to provide drugs to Kareem Brown. On March 26, 2006, Steven Brown was shot and killed. Bush and Milton had conversations regarding Steven Brown's death and street gossip indicated that Kareem Brown was the shooter.

On September 20, 2006, Bush attempted to locate Kareem Brown, in an attempt to exact revenge for the death of Steven Brown. While looking for Kareem Brown, Bush encountered Kareem Brown's brother-in-law, the decedent, Leary Wall. Bush demanded that Wall tell him where Kareem Brown could be found and, when Wall did not or could not tell, Bush shot him. Bush then left the area in a vehicle driven by an individual named Qua.

At approximately 9:45 p.m. that same evening, Philadelphia Police Detective Michael Rocks responded to a radio call on the 2100 block of Dover Street in Philadelphia. Upon arriving at the scene, Rocks observed Wall lying on the highway, having been shot four times. Wall was transported to Temple University Hospital, where he was later pronounced dead. Two bullets were recovered from Wall's body, while seven nine[-]millimeter cartridge cases were recovered from the homicide scene. Both recovered bullets were fired from the same firearm.

Some time following Wall's shooting, an individual by the name of "Bum" contacted Bush's friend Milton in order to buy a firearm. Milton contacted Bush, who indicated that he had a "dirty" gun to sell. Bush indicated that the firearm was "dirty" because he had used it to shoot Wall and further detailed the circumstances surrounding the shooting. Bush subsequently sold Bum a black nine[-]millimeter firearm for approximately $500.00.

On July 12, 2007, Bush was arrested and charged for a separate shooting that occurred on September 13, 2006, one week prior to the shooting of Wall. On that date, police responded to a reported shooting on the 1900 block of West Norris Street in Philadelphia. Upon arriving at the scene, police found Amin Payne and Timothy Fontaine, both suffering from gunshot wounds. Payne was shot a total of seven times and police recovered seven

- 2 -

nine[-]millimeter fired cartridge casings. Charges against Bush were ultimately *nolle prossed* due to the lack of cooperation of the witnesses.

In 2009, Bush was in custody in Delaware County Prison with Robert Matthews as a cellmate. At some point, Payne, the victim of the September 13, 2006 shooting, was escorted into the cell block. Bush informed Matthews that he had shot Payne seven times "over a beef" using a nine[-]millimeter handgun. Upon noticing Bush, Payne alerted the prison officials and was escorted from the block. At a later time, while still in custody, Bush told Matthews that he had killed someone with the same firearm that he had used to shoot Payne. Bush thereafter informed Matthews of the circumstances of his shooting Wall.

On July 30, 2010, K[h]alil Bell, a friend of Bush, contacted the Philadelphia Police through a letter stating that he was willing to talk with police. Detective William Kelhower conducted an interview with Bell on February 7, 2011, concerning the death of Wall. In this interview, Bell stated that Bush had admitted to Bell that Bush had shot Wall while attempting to locate Kareem Brown.

On September 20, 2010, Mat[t]hews gave a statement to police concerning what Bush had told him while in custody. On November 8, 2011, Clarence Milton, Bush's friend, provided a statement to the police indicating that Bush confessed to killing Wall during their discussion about the sale of the "dirty" gun. Subsequent testing confirmed that the seven bullet casings recovered from the scene of the homicide matched the seven casings recovered a week prior to the homicide from the shooting of Payne. An arrest warrant was issued for Bush on February 6, 2012, and Bush was taken into custody two days later, on February 8, 2012.

*Commonwealth v. Bush*, 2015 WL 7587344, unpublished memorandum, at

*1-2 (Pa. Super. filed February 17, 2015) (quoting Trial Court Opinion,

9/12/14, at 1-4) (brackets omitted). At the conclusion of trial, the jury

convicted Bush of first-degree murder, firearms not to be carried without a

license, and possessing instruments of crime.[1] On January 30, 2014, Bush was sentenced to life imprisonment for his conviction of first-degree murder, and no further penalty on the remaining charges.

Bush appealed, and this Court affirmed his convictions on February 17, 2015. Bush petitioned for allowance of appeal to our Supreme Court, which the Supreme Court denied on July 29, 2015.

On February 1, 2016, Bush filed a timely *pro se* PCRA petition. Bush thereafter filed multiple *pro se* supplemental PCRA petitions wherein he raised multiple claims of ineffective assistance of trial and direct appeal counsel[2] and ***Brady***[3] violations. The PCRA court[4] appointed counsel to represent Bush during the PCRA proceedings. The PCRA court granted an evidentiary hearing on some, but not all, of Bush's claims.

Bush believed his interests were not being adequately represented, so he elected to proceed *pro se*. The PCRA court held a ***Grazier***[5] hearing and granted his request. However, Bush allowed stand-by counsel to conduct the

---

[1] 18 Pa.C.S.A. §§ 2502(a), 6106(a)(1), and 907(a), respectively.

[2] Bush was represented by the same attorney for trial and direct appeal. This attorney was unable to testify at the PCRA proceedings as he had passed away during the pendency of the PCRA petition.

[3] ***Brady v. Maryland***, 373 U.S. 83 (1963).

[4] The Honorable Glenn B. Bronson presided over Bush's trial and PCRA proceedings.

[5] ***Commonwealth v. Grazier***, 713 A.2d 81 (Pa. 1998).

three evidentiary hearings held August 12, 2022, October 12, 2022, and November 28, 2022. At the conclusion of the three evidentiary hearings, the PCRA court dismissed Bush's PCRA petition.

Bush appealed and complied with the PCRA court's order to file a Rule 1925(b) statement. *See* Pa.R.A.P. 1925(b). He now raises 14 claims of error:

1. Did the PCRA [c]ourt err in denying [Bush's] claim that trial counsel provided ineffective assistance of counsel where he failed to interview and present Timothy Fontaine as a witness during trial?

2. Did the PCRA [c]ourt err in denying [Bush's] claim that trial counsel provided ineffective assistance of counsel where he failed to present letters from Clarence Milton to Khalil Bell?

3. Did the PCRA [c]ourt err in denying [Bush's] claim that direct appeal counsel was ineffective for failing to raise on direct appeal that the trial [c]ourt abused its discretion by admitting evidence of the Amin Payne shooting during [Bush's] trial?

4. Did the PCRA [c]ourt err in denying [Bush's] claim that the Commonwealth committed a *Brady* violation by suppressing evidence of Khalil Bell's letter to homicide detectives and also Bell's statement falsely implicating [Bush] for the murder of Sharieff Lighty?

5. Was PCRA counsel ineffective for failing to properly cross-examine witness Clarence Milton and present evidence regarding letters that Milton wrote to Kenneth Whitley?

6. Was PCRA counsel ineffective for failing to raise the claim of after discovered/newly discovered evidence consisting of the evidentiary testimony of Clarence Milton and Khalil Bell, where both witnesses testified that [Bush] did not kill Sharieff Lighty, and the allegations against [Bush] were fabricated?

7. After discovered/[n]ewly discovered evidence consisting of *Brady* material that the Commonwealth intentionally suppressed from the defense relating to the credibility and impeachment evidence of witness Amin Payne?

8. Did the PCRA [c]ourt abuse its discretion in failing to hold an evidentiary hearing on claims where [Bush] had raised genuine issues of material fact that entitle him to relief?

A) Trial counsel provided ineffective as[sis]tance when he failed to object to the introduction of a statement from witness Khalil Bell, thus violating [Bush's] right to confrontation.

B) Trial counsel provided ineffective assistance when he failed to investigate, interview, and call Alfonso Holder as a defense witness at trial.

C) Direct [a]ppeal counsel failed to raise trial court abuse of discretion by allowing prejudicial evidence at trial related to the shooting of Amin Payne.

D) Direct appeal counsel failed to raise trial court abuse of discretion when overruling trial counsel's objection to the prosecutor questioning [Bush] on cross-examination about carrying guns.

E) The Commonwealth committed a *Brady* violation by failing to disclose that witness Clarence Milton was arrested and convicted for possession of the same caliber firearm used in the instant murder case; also [Bush] was denied due process and a fair trial as a result of this firearm being destroyed.

F) Newly discovered/[a]fter discovered evidence showing that the prosecution committed a *Brady* violation by intentionally withholding exculpatory evidence from the defense; and the use of unduly coercive interrogation tactics by [D]etective William Kelhower.

Appellant's Brief, at 5-6 (suggested answers omitted).

Our review of the grant or denial of PCRA relief is limited to examining whether the PCRA court's findings of fact are supported by the record, and whether its conclusions of law are free from legal error. The PCRA court's credibility determinations, when supported by the record, are binding on this Court; however, we apply a *de novo* standard of review to the PCRA court's legal conclusions.

- 6 -

***Commonwealth v. Small***, 189 A.3d 961, 971 (Pa. 2018) (citations omitted).

Furthermore,

> [a] petitioner is not entitled to a PCRA hearing as a matter of right; the PCRA court can decline to hold a hearing if there is no genuine issue concerning any material fact, the petitioner is not entitled to PCRA relief, and no purpose would be served by any further proceedings.

***Commonwealth v. Postie***, 200 A.3d 1015, 1022 (Pa. Super. 2018) (*en banc*) (citation omitted). It is Bush's "burden to persuade this Court that the PCRA court erred and that such error requires relief." ***Commonwealth v. Williams***, 196 A.3d 1021, 1027 (Pa. 2018) (citation omitted).

As several of Bush's claims concern counsel's effectiveness, we observe that "[t]he law presumes counsel has rendered effective assistance." ***Postie***, 200 A.3d at 1022 (citation omitted).

> To overcome this presumption, a petitioner must establish that: (1) the underlying substantive claim has arguable merit; (2) counsel did not have a reasonable basis for his or her act or omission; and (3) the petitioner suffered prejudice as a result of counsel's deficient performance, that is, a reasonable probability that but for counsel's act or omission, the outcome of the proceeding would have been different.

***Commonwealth v. Wholaver***, 177 A.3d 136, 144 (Pa. 2018) (citation omitted). "A PCRA petitioner must address each of these prongs on appeal[, and a] petitioner's failure to satisfy any prong of this test is fatal to the claim." ***Id.*** (citations omitted).

In his first claim, Bush asserts trial counsel was ineffective for failing to call Timothy Fontaine as a witness.

> `When raising a claim of ineffectiveness for the failure to call a potential witness, a petitioner satisfies the performance and prejudice requirements of the **Strickland**[6] test by establishing that: (1) the witness existed; (2) the witness was available to testify for the defense; (3) counsel knew of, or should have known of, the existence of the witness; (4) the witness was willing to testify for the defense; and (5) the absence of the testimony of the witness was so prejudicial as to have denied the defendant a fair trial.

**Commonwealth v. Sneed**, 45 A.3d 1096, 1108-09 (Pa. 2012) (citations omitted).

Bush argues that the PCRA court erred in finding that his trial counsel was not ineffective for failing to call Timothy Fontaine as a witness at trial. **See** Appellant's Brief, at 10. Timothy Fontaine was a witness and victim of the September 13, 2006, shooting. **See** N.T. PCRA Hearing, 8/12/22, at 19. Bush claims that Fontaine would have been beneficial for his defense because the Commonwealth used the September 13, 2006, shooting to connect him to the homicide of September 20, 2006, as the same firearm was used in both shootings and Bush confessed to both shootings. **See** N.T. Trial, 1/27/14, at 81; N.T. Trial, 1/29/14, at 51, 61-62, 65-66, 67. Fontaine testified at the PCRA hearing that he did not see Bush shoot Amin Payne on September 13, 2006. **See** N.T. PCRA Hearing, 8/12/22, at 20-21. Fontaine further testified that he would have testified for Bush if called to do so, but that no one contacted him prior to trial. **See id.** at 22, 30.

---

[6] **Strickland v. Washington**, 466 U.S. 668 (1984).

The PCRA court held that Bush did not prove that Fontaine was available for trial and that there was no prejudice from Fontaine's failure to testify. **See** PCRA Court Opinion, 3/14/23, at 10. As the PCRA court aptly explained:

Mr. Fontaine made numerous statements that diminished his credibility. He stated that he did not "fully witness" the shooting. [N.T. PCRA Hearing, 8/12/22, at 19]. Furthermore, while Mr. Fontaine initially stated that [] two men were arguing just before the shooting occurred, he later stated that the two men were not arguing, but then changed his mind again. [**See i**]**d.** at 20, 41-42. Mr. Fontaine also stated that he did not remember ever seeing the affidavit in his name submitted by defendant in support of his PCRA petition, while also stating that he signed the affidavit. [**See i**]**d.** at 33-34, 43-44.

Additionally, Mr. Fontaine testified that while he was "something like" a mentor to the defendant, he did not know why defendant was incarcerated. **Id.** at 36. He testified that someone told him about three years ago that defendant had been arrested in connection with Mr. Payne's 2006 shooting, but that he never contacted the police or the District Attorney's Office to tell them that the defendant could not have shot Mr. Payne. [**See i**]**d.** at 36. At the December 2, 2022 listing, the [c]ourt found Mr. Fontaine's testimony to be incredible. [**See**] N.T. 12/2/2022 at 10.

The [c]ourt also found that Mr. Fontaine was not willing to testify at the time of defendant's trial and was not available for the defense. [**See i**]**d.** at 10. While Mr. Fontaine stated he was available to testify on defendant's behalf, [**see**] N.T. 8/12/2022 at 30, the record established that both the Commonwealth and a defense investigator were looking for Mr. Fontaine at the time of trial, but neither was able to locate him. [**See**] N.T. 1/28/2014 at 300. Furthermore, the record also demonstrates that the charges against both Mr. Payne and the defendant in relation to the September 13, 2006 shooting were nolle prossed for lack of witness participation, further establishing that Mr. Fontaine was unavailable or unwilling to testify.

Accordingly, defendant's claim fails because Mr. Fontaine was not willing or available to testify at trial. **See** [**Commonwealth v.**] **Johnson**, 966 A.2d [523,] 536 [(Pa. 2009)]. In addition, based on Mr. Fontaine's lack of credibility at

- 9 -

the evidentiary hearing, there was not a reasonable probability that the result of defendant's trial would have been different had trial counsel successfully subpoenaed Mr. Fontaine to testify at defendant's trial. *See* [*Commonwealth v.*] *Sneed*, 899 A.2d [1067,] 1084 [(Pa. 2006)]. No relief is due.

PCRA Court Opinion, 3/14/23, at 9-10. We agree with the PCRA court and adopt it analysis as our own. Bush's first claim fails.

In Bush's second allegation of error, he claims the PCRA court erred in denying his claim that trial counsel was ineffective for failure to use letters during his cross-examination of Clarence Milton that Milton allegedly wrote and mailed to his brother, Khalil Bell, prior to trial. *See* Appellant's Brief, at 11-12. Bush asserts that in these letters "authored by Milton, he implores his brother (Bell)[] not to recant his testimony implicating appellant because doing so would jeopardize Milton's federal plea agreement." *Id.* at 12.

There were two letters allegedly authored by Milton. One which the PCRA court labeled the "print letter" and one which the PCRA court labeled the "cursive letter" based upon the handwriting of the letters, as one was written in cursive and the other letter was written in print. *See* PCRA Court Opinion, 3/14/23, at 11. The cursive letter did not provide any benefit to Bush, as it did not discuss him or his case. *See id.* The print letter, however, "would have provided [Bush] significant material to impeach Mr. Milton." *Id.* The problem with this claim is that Milton, at the PCRA hearing, denied writing the print letter. *See* N.T. PCRA Hearing, 8/12/22, at 53-56.

The PCRA court found that Milton credibly testified to which letters he wrote. *See* PCRA Court Opinion, 3/14/23, at 11. The PCRA court further found that "a lay review of the handwriting in the letters [] clearly appeared to have been written by two different people." *Id.* The PCRA court held that Bush could not prove his counsel had no reasonable basis nor that prejudice resulted because trial counsel failed to use the letters. *See id.* at 11-12. We agree.

> Where matters of strategy and tactics are concerned, counsel's assistance is deemed constitutionally effective if he chose a particular course that had some reasonable basis designed to effectuate his client's interests. A finding that a chosen strategy lacked a reasonable basis is not warranted unless it can be concluded that an alternative not chosen offered a potential for success substantially greater than the course actually pursued. A claim of ineffectiveness generally cannot succeed through comparing, in hindsight, the trial strategy employed with alternatives not pursued.

*Sneed*, 45 A.3d at 1107 (citations and quotation marks omitted).

Prejudice requires "a reasonable probability that the outcome of the proceedings would have been different." *Postie*, 200 A.3d at 1023 (citation omitted). "[A] reasonable probability is a probability that is sufficient to undermine the confidence in the outcome of the proceeding." *Id.* (citation omitted). When evaluating whether a PCRA petitioner has established prejudice, we must consider the totality of the evidence presented. *See id.*

At trial, Milton testified to Bush's confession that he shot Wall. *See* N.T. Trial, 1/28/14, at 81. Bush's counsel conducted a thorough cross-examination that included Milton's significant benefit for testifying against Bush, as he was facing a minimum of 35 years to life in the federal court system, but only

received ten years and was going to request a lesser sentence upon finishing his cooperation; that Milton had a number of serious criminal offenses and was a career criminal in the federal court system; that Milton was on the streets of Philadelphia the day that Wall was shot and killed, and he wanted retaliation for his friend Steven Brown being killed; that he was trying to find Kareem Brown to kill him and was reaching out to people who knew Kareem Brown because he believed Kareem Brown killed Steven Brown; that he was arrested for firearm possession; that he has killed someone by shooting them; that he has not been sentenced on his own murder charge, but he is expecting a lesser sentence and a concurrent sentence to his federal sentence; that he always carried a firearm; that he carried a nine-millimeter firearm at times; that Bush told him he shot Wall in the head, although the facts confirmed that Wall was not shot in the head; and, finally, that he knows the city of Philadelphia very well and would not confuse two streets, but he testified at the preliminary hearing that Bush confessed to him about a different street corner than what he testified to at trial. ***See id.*** at 98-99, 99-100, 103, 105, 105-106, 107, 112-113, 122-123, 125, 129-132, 138.

While the PCRA court was unable to hear from trial counsel as he had passed away prior to the hearings, we agree with the PCRA court that trial counsel had a reasonable basis designed to effectuate his client's interests by conducting a thorough cross-examination of Milton and eliciting the reasons why Milton might be lying and the possibility that Milton shot Wall. Bush has

been unable to show that the potential for success in using a letter that Milton denies writing was substantially greater than the course counsel chose to take.

Moreover, Bush has not shown how using a letter that Milton denies writing would have led to a different result at trial. The totality of the evidence shows that trial counsel did a thorough job cross-examining Milton and eliciting beneficial information for his closing argument. Bush's second claim does not entitle him to relief.

Bush's third allegation focuses on his direct appeal. Bush asserts that direct appeal counsel should have argued that the trial court erred in admitting the evidence of the shooting of Amin Payne. *See* Appellant's Brief, at 13. Although the heading of Bush's argument states that direct appeal counsel was ineffective, Bush's argument in this section does not once address ineffective assistance of counsel. *See id.* at 13-14. This section of Bush's argument focuses on why the trial court abused its discretion in admitting the evidence of Payne's shooting. *See id.* We find this claim of direct appeal counsel's ineffectiveness waived for Bush's failure to develop it. *See Commonwealth v. D'Amato*, 856 A.2d 806, 814 (Pa. 2004) (undeveloped arguments that are the functional equivalent of no argument at all are waived); *Wholaver*, 177 A.3d at 144 (a PCRA petitioner must address each

- 13 -

of **Stickland**/**Pierce**[7] prongs of ineffective assistance of counsel and failure to do so can result in waiver).

Even if not waived, Bush would not be entitled to relief. The PCRA court properly disposed of this claim, and we adopt its analysis as our own:

> Defendant's third claim is that the [c]ourt erred in denying his claim that direct appeal counsel was ineffective for failing to raise a claim that the trial court abused its discretion when it admitted evidence of the Amin Payne shooting during trial. [] In particular, the [c]ourt permitted the Commonwealth to prove that on September 13, 2006, one week before the murder of Leary Wall here at issue, defendant shot Amin Payne multiple times with the same nine-millimeter handgun that was used to shoot and kill Leary Wall. [] This claim is without merit.
>
> The law regarding the admissibility of uncharged criminal conduct in a criminal trial is well-established. While evidence of other uncharged criminal acts is not admissible to prove bad character or criminal propensity, it may be admitted for other purposes where the probative value of the evidence outweighs the potential for prejudice. [**See**] Pa.R.E. 404(b); [] **Commonwealth v. Williams**, 896 A.2d 523, 539 (Pa. 2006). Rule 404(b) explicitly permits evidence of other crimes for the purpose of "proving . . . identity." Pa.R.E. 404(b)(2). Evidence that the same weapon was used in another crime is relevant to establishing identity. **See Commonwealth v. Stiles**, 143 A.3d 968, 975-77 (Pa. Super. 2016); **see also Commonwealth v. Beckman**, 503 A.2d 443, 445 n. 3 ([Pa. Super.] 1986) (evidence of an unrelated previous shooting was admissible to establish defendant's identity because ballistics evidence showed the same gun was used in both shootings). The admission of other bad acts evidence will only be reversed upon a showing of an abuse of discretion by the trial court. [**See**] **Commonwealth v. Chmiel**, 889 A.2d 501, 534 (Pa. 2005).
>
> Here, the Commonwealth's ballistics evidence established that the weapon used in the murder of decedent matched the weapon used to shoot Amin Payne one week prior. [**See**] N.T.

---

[7] **Commonwealth v. Pierce**, 786 A.2d 203 (Pa. 2001).

[Trial], 1/29/2014, at 51-52. Accordingly, evidence that defendant was the shooter of Mr. Payne was compelling evidence that defendant had access to the weapon used in Mr. Wall's murder, and therefore, that defendant was also the shooter of Mr. Wall. As such, the [c]ourt properly found that the probative value of the evidence exceeded the potential for unfair prejudice and that it was admissible pursuant to [R]ule 404(b). ***See Williams***, 896 A.2d at 539.

Furthermore, the [c]ourt gave the following instruction to the jury specifying the limited purpose for which evidence regarding the separate shooting could be considered:

> Now, ladies and gentlemen, you heard evidence during this case tending to prove that the defendant was guilty of improper conduct for which he is not on trial in this case. And what I'm speaking about is the testimony to the effect that the defendant was involved . . . with a shooting prior to the alleged homicide that is at issue in our case. This evidence, ladies and gentlemen, is before you for a limited purpose. That is to say, for the purpose of tending . . . to show access to and possession of the gun that was allegedly used in the homicide that is at issue here in this case. This evidence must not be considered by you in any way other than for the purpose that I just described to you. You must not regard this evidence as showing that the defendant is a person of bad character or criminal tendencies from which you might be inclined to infer guilt.

N.T.[,] 1/30/2014[,] at 110-11. Given the [c]ourt's instruction cautioning the jury to consider the evidence for the proper purpose only, the potential for unfair prejudice was limited. [***See***] ***Commonwealth v. Sherwood***, 982 A.2d 483, 497-98 (Pa. 2009) (determining that a limiting instruction could overcome prejudicial effect of prior bad acts evidence).

Accordingly, the evidence was properly admitted under Rule 404(b). Since counsel cannot be deemed ineffective for failing to raise a meritless claim, no relief is due.

PCRA Court Opinion, 3/14/23, at 12-13.

- 15 -

Bush's fourth claim asserts a **Brady** violation.

> The law governing alleged **Brady** violations is well-settled. In **Brady**, the United States Supreme Court held that "the suppression by the prosecution of evidence favorable to an accused upon request violates due process where the evidence is material either to guilt or to punishment, irrespective of the good faith or bad faith of the prosecution." **Brady**, 373 U.S. at 87[]. The Supreme Court subsequently held that the duty to disclose such evidence is applicable even if there has been no request by the accused, [**see**] **United States v. Agurs**, 427 U.S. 97, 107 [] (1976), and that the duty may encompass impeachment evidence as well as directly exculpatory evidence, [**see**] **United States v. Bagley**, 473 U.S. 667, 676–77 [] (1985). Furthermore, the prosecution's **Brady** obligation extends to exculpatory evidence in the files of police agencies of the same government bringing the prosecution. [**See**] **Kyles v. Whitley**, 514 U.S. 419, 438 [] (1995); **Commonwealth v. Burke**, [] 781 A.2d 1136, 1142 ([Pa.] 2001).
>
> On the question of materiality, the Court has noted that "[s]uch evidence is material 'if there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different.'" **Strickler v. Greene**, 527 U.S. 263, 280, [] (1999) (quoting **Bagley**, 473 U.S. at 682[]). The materiality inquiry is not just a matter of determining whether, after discounting the inculpatory evidence in light of the undisclosed evidence, the remaining evidence is sufficient to support the jury's conclusions. "Rather, the question is whether 'the favorable evidence could reasonably be taken to put the whole case in such a different light as to undermine confidence in the verdict.'" **Strickler**, 527 U.S. at 290 [] (quoting **Kyles**, 514 U.S. at 435[]). "Thus, there are three necessary components that demonstrate a violation of the **Brady** strictures: the evidence was favorable to the accused, either because it is exculpatory or because it impeaches; the evidence was suppressed by the prosecution, either willfully or inadvertently; and prejudice ensued." **Burke**, 781 A.2d at 1141 (citing **Strickler**, 527 U.S. at 281–82[]).

**Commonwealth v. Lambert**, 884 A.2d 848, 853-54 (Pa. 2005).

Bush claims a letter written by Khalil Bell that implicated him in the murder of another individual, Sharieff Lighty, should have been disclosed to him prior to trial.[8] *See* Appellant's Brief, at 15. Bush asserts this letter was relevant to impeach Bell as Bush was incarcerated at the time of Lighty's murder and therefore could not have killed Lighty. *See id.*

Notably, however, Bush was incarcerated in Philadelphia's work release center at the time of Lighty's murder. *See* N.T. PCRA Hearing, 11/28/22, at 53-54. The Correctional Lieutenant Work Release Director testified to his time working at the Philadelphia work release center in 2006. *See id.* at 21-22. He explained that, in and around 2006, an inmate at the work release center could leave the work release center to obtain the necessary paperwork to obtain a job such as an identification card, social security card, or birth certificate; to visit family on a family pass which could last as long as 12 hours; to go to an interview for a job; and during the hours he or she was scheduled to work. *See id.* at 24, 41, 60. The work release center did keep records of all inmates when they left the facility, however, the records from 2006 are no longer available. *See id.* at 62. No one could say whether Bush was inside the work release center at the time of Lighty's murder.

---

[8] The letter provided to this Court, and the PCRA court, is illegible. However, the PCRA court found the prosecutor at trial, Ms. Watson-Stokes, credibly testified that the copy of the letter she had during trial was legible and it was read verbatim into the trial record. *See* PCRA Court Opinion, 3/14/23, at 20 n.8.

As Bush cannot show he was incarcerated at the time of Lighty's murder, making the letter and Bell's accusations false, he cannot show that the letter was material, i.e. that the letter undermines confidence in the verdict. *See Lambert*, 884 A.2d at 854. Therefore, this claim has no merit.

In his fifth allegation of error, Bush asserts PCRA counsel was ineffective for failing to cross-examine Clarence Milton with letters that Milton allegedly wrote to another inmate, Kenneth Whitley.[9] *See* Appellant's Brief, at 18. Bush claims these letters were written by Milton and provided to Whitley "so that Whitley could memorize the details and corroborate Milton's fabrications." *Id.* Bush does not provide any proof that Whitley had the letters for the purpose of memorizing their contents to corroborate Milton's statements. Whitley was not called as a witness at the PCRA hearings to explain why he had the letters allegedly written by Milton. The letters are undated and not signed. A thorough review of the letters also show no connection to the homicide of Leary Wall and Bush's involvement in the homicide.

Furthermore, Milton was asked about Whitley during the PCRA hearing. *See* N.T. Hearing, 8/12/22, at 64. Milton did not recall Whitley. *See id.* Milton said he wrote to his family when asked if he wrote letters to other inmates.

_____

[9] This claim was raised for the first time in Bush's Rule 1925(b) statement and pursuant to *Commonwealth v. Bradley*, 261 A.3d 381, 401 (Pa. 2021) (holding that a PCRA petitioner may raise claims of PCRA counsel's ineffectiveness on appeal if that is the first opportunity to do so), we find that this claim has been properly preserved for our review.

*See id.* at 65. Without further specification, Bush has not provided any evidence to show that the result of the PCRA hearings would have been different if PCRA counsel had presented the letters to Milton. *See Wholaver*, 177 A.3d at 144. This claim fails.

Bush's sixth allegation of error also focuses on PCRA counsel's stewardship: "Was PCRA counsel ineffective for failing to raise the claim of after discovered/newly discovered evidence consisting of the evidentiary hearing testimony of Clarence Milton and Khalil Bell, where both witnesses testified that [Bush] did not kill Sharieff Lighty[] and the allegations against [Bush] were fabricated?" Appellant's Brief, at 19 (unnecessary capitalization removed).

However, Bush does not discuss a claim of after discovered or newly discovered evidence in his brief to this Court. *See* Appellant's Brief, at 19-22. Instead, Bush now asserts for the first time that the Commonwealth violated *Brady* by failing to disclose the evidence of Milton's and Bell's false accusations that Bush killed Lighty. *See id.* Because the *Brady* claim was not presented to the PCRA court, it is waived. *See Commonwealth v. Paddy*, 15 A.3d 431, 446 (Pa. 2011) (noting that "[f]ailure to raise an issue before the PCRA court results in waiver.") (citation omitted). Moreover, even if Bush had properly addressed his claim of after/newly discovered evidence, we would conclude that the PCRA court accurately discussed and disposed of the issue. *See* PCRA Court Opinion, 3/14/23, at 17-18.

- 19 -

In Bush's seventh allegation of error, he raises a claim of "after discovered/newly discovered evidence consisting of ***Brady*** material[.]" Appellant's Brief, at 22. Specifically, Bush claims he discovered that Amin Payne "falsely implicated several individuals for murder and that Payne actually perjured himself during testimony in the murder trial of that case." ***Id.*** Bush cites to "exhibit P-37" to support his claim. ***Id.*** After an exhaustive and thorough review of the record, we cannot find this exhibit nor any PCRA petition that raises this claim. This exhibit is simply not in the record. Therefore, this claim is waived. ***See Paddy***, 15 A.3d at 446.

Moreover, as the PCRA court duly observed, "Mr. Payne never testified at trial or the PCRA evidentiary hearing. As such, Mr. Payne's credibility was never at issue and there was no testimony to impeach. Accordingly, defendant's claim is frivolous." PCRA Court Opinion, 3/14/23, at 24. We agree. Even if preserved for appeal, it is not relevant whether Payne falsely implicated others when Payne did not testify against Bush.

In Bush's eighth issue he presents six sub-issues. ***See*** Appellant's Brief, at 24-47. These sub-issues include claims that the PCRA court did not grant an evidentiary hearing. ***See id.*** Both the Commonwealth and the PCRA court ask this Court to find these claims waived, as Bush did not enumerate these claims in his Rule 1925(b) statement. ***See*** Appellee's Brief, at 32; PCRA Court Opinion, 3/14/23, at 25. We agree that these claims are waived.

Bush's final issue in his Rule 1925(b) statement states, in full, "Did the PCRA [c]ourt abuse its discretion in failing to hold an evidentiary hearing on claims where [Bush] had raised genuine issues of material fact that entitle him to relief?" Rule 1925(b) Statement, 1/13/23, at 4 (unpaginated). "It is well-established that any issue not raised in a Rule 1925(b) statement will be deemed waived for appellate review." *Commonwealth v. Bonnett*, 239 A.3d 1096, 1106 (Pa. Super. 2020) (citation omitted). "Further, an appellant's concise statement must identify the errors with sufficient specificity for the trial court to identify and address the issues the appellant wishes to raise on appeal." *Id.* (citing Pa.R.A.P. 1925(b)(4)(ii)). Bush's Rule 1925(b) statement did not specify which claims he believed had genuine issues of material fact which required a hearing. As such, we find Bush's eighth issue, including all six sub-issues, waived.

Order affirmed.

Judgment Entered.

Benjamin D. Kohler, Esq.
Prothonotary

Date: 6/7/2024

- 21 -